IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) |
| Plaintiff, | ) Case No. 07 C 64 |
| v. | ) Judge Virginia M. Kendall |
| CITY OF WAUKEGAN, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant, Scottsdale Insurance Company ("Scottsdale") brings a declaratory judgment complaint against Defendant/Counter-Plaintiff, City of Waukegan, ("Waukegan") seeking a declaration that it was under no obligation to defend and indemnify Waukegan arising out of the *S. Alejandro Dominquez v. Paul Hendley* lawsuit. Waukegan brings a counterclaim against Scottsdale for breach of contract and declaratory judgment and Scottsdale moves to dismiss Count III of Waukegan's Counterclaim seeking costs and attorneys' fees under Section 155 of the Illinois Insurance Code for failure to state a claim under Rule 12(b)(6). For the reasons stated herein, Scottsdale's Motion to Dismiss is granted and Count III is dismissed with prejudice.

## WAUKEGAN'S ALLEGATIONS

Scottsdale is an insurance company and provided Law Enforcement Liability Coverage for the City's Police Department. Countercl. ¶ 1. Scottsdale's Comprehensive Law Enforcement Liability Policies PPL 81101, PPL 911489, and PPL 111427 ("the policies") were effective from

1

November 1, 1988 to November 1, 1989, November 1, 1989 to November 1, 1990, and November 1, 1990 to November 1, 1991, respectively. Countercl. ¶¶ 10-12. The policies included provisions for a $1 million limit for each person and each occurrence and provisions allowing coverage for payments in addition to the applicable limits of liability. *Id*.

On April 23, 2004, S. Alejandro Dominquez ("Dominquez") filed suit against Waukegan and several of the City's Police officers in a case titled *S. Alejandro Dominquez v. Paul Hendley*, Case No. 04 C 2907 ("the underlying action"). Countercl. ¶ 5. Dominquez alleged that on September 21, 1989, he was arrested by officers of the City of Waukegan Police Department and charged with two counts of aggravated criminal sexual assault and one count of home invasion arising from an incident which occurred on September 19, 1989. *Id.* Dominquez was convicted, but his convictions were vacated on April 26, 2002 after DNA testing excluded him as the rapist. Countercl. ¶ 7. On April 23, 2004, Dominquez brought claims against Waukegan for false arrest and malicious prosecution and alleged that he was deprived of his Fourth, Fifth, and Fourteenth Amendment rights. Countercl. ¶¶ 5, 8.

On September 27, 2006, Waukegan, through its claims administrator, notified the law firm of Lord, Bissell & Brook regarding the Dominquez claim, and on September 28, 2006, Waukegan notified Scottsdale directly. Countercl. ¶ 9. The underlying lawsuit commenced trial on October 3, 2006. Countercl. ¶ 19. Two weeks later, the jury returned a verdict in favor of Dominquez in the amount of $9,063,000. Countercl. ¶ 20.

Scottsdale had actual knowledge of the Complaint and the status of the proceedings as of September 28, 2006, but failed to appear and defend Waukegan at trial. Countercl. ¶¶ 17-18. On October 9, 2006, twelve days after Scottsdale received notice and six days after trial commenced,

2

Scottsdale sent Waukegan a "reservation of rights" letter denying it owed coverage to Waukegan based upon Waukegan's delay in notifying Scottsdale and because the Dominquez matter wasn't a covered occurrence. Pl. Cplt. Ex. 7. On January 5, 2007, Scottsdale file a declaratory judgment action to determine its coverage obligations. Countercl. ¶¶ 1, 18, 25. Countercl. ¶¶ 17-18. Waukegan alleges that knowingly and intentionally refused to provide insurance coverage to Waukegan and that Scottsdale's refusal to provide coverage was and continues to be vexatious and unreasonable. Countercl. ¶¶ 53-54.

## **STANDARD**

When considering a motion under Rule 12(b)(6), a court must take as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The plaintiff need not allege all of the facts involved in the claim. *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). The claim though must be supported with enough facts, taken as true, that plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

## **DISCUSSION**

Count III of Waukegan's Counterclaim seeks attorneys' fees and costs under Section 155 of the Illinois Insurance Code related to both the underlying claim and the pending claim. Countercl. ¶ 55. Section 155 provides:

> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the

3

> taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
> (b) $ 60,000;
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155 (West 2007). Scottsdale's actions or its delay must be vexatious and unreasonable in order to give rise to Section 155 liability and whether Scottsdale's conduct was vexatious and unreasonable is a question for the Court, and not a jury. 215 ILCS § 5/155 (West 2007); *See also Horning Wire Corp. v. The Home Indemnity Co.*, 8 F. 3d 587, 590 (7th Cir. 1993). An insurer's conduct is vexatious and unreasonable when the insurer's behavior was willful and without reasonable cause. *Citizen First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). Simply pleading that Scottsdale knowingly and intentionally refused to provide insurance coverage and that Scottsdale's refusal "was and continues to be vexatious and unreasonable," without some modicum of factual support, is insufficient to plausibly suggest that Waukegan is entitled to relief under the statute. There is nothing inherently vexatious or unreasonable about the twelve-day time period between notice to Scottsdale and Scottsdale's reservation of rights letter or a three-month time period between Waukegan's notice to Scottsdale and Scottsdale's declaratory judgment action. Scottsdale articulated its policy defenses twelve days after it received notice of the underlying action and there is nothing in the Counterclaim suggesting that Scottsdale's position was unreasonable or lacked merit in light of the policies' language.

Moreover, an insurer does not act vexatiously and unreasonably when: (1) there is a bona

fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law. *P&M/Mercury Mech. Corp. v. W. Bend Mut. Ins. Co.*, 483 F. Supp. 2d 601, 603-4 (N.D. Ill. 2006) (*citing Citizen*, 200 F. 3d at 1110. Here, there is a bona fide dispute over whether Waukegan complied with the notice provision in the policies and whether the claim was a covered occurrence. For example, the polices each have identical language concerning conditions and one such condition is number 4, Insured's Duties in the Event of Occurrence, Claim or Suit. Countercl. Ex. 4-6. Subsection B states:

> If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process, received by him or his representative.

Waukegan arguably had notice of a claim against it on April 26, 2002 when Dominquez's convictions were vacated, but certainly had notice of a "suit" on April 23, 2004 when Dominquez filed his claims against Waukegan for false arrest and malicious prosecution. Countercl. ¶¶ 5, 7-8. Notification requirements in insurance policies are valid conditions precedent to coverage under Illinois law that may relieve the insurer of indemnity obligations under the policy. *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 729 N.E.2d 915, 921 (Ill. App. Ct. 2000). A delay of a few months may be a breach of notice provisions as a matter of law. *Equity Gen. Ins. Co. v. Patis*, 456 N.E.2d 348, 352 (Ill. App. Ct. 1983) (four and one-half months); *Ill. Valley Minerals Corp. v. Royal Globe Ins. Co.*, 388 N.E.2d 253, 257-58 (Ill. App. Ct. 1979) (six months). Scottsdale received notice 29 months after Dominquez filed suit and Waukegan's delay is more than enough to establish that a bona fide coverage dispute existed because the insurance policy requires "immediate" notice when a claim is made or a suit is brought against the insured and Waukegan pleads no excuse for its delay.

5

*See Patis*, 456 N.E.2d at 348; *Royal Globe*, 388 N.E.2d at 255.

Waukegan argues that Scottsdale is estopped from asserting late notice defenses because it failed to defend Waukegan under a reservation of rights and failed to file a declaratory judgment action until January 5, 2007, after the jury returned its verdict in the underlying action. Under the estoppel doctrine, an insurer which breaches its duty to defend is estopped from raising policy defenses to coverage. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1133 (Il. 1999). An insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured. *Id.* at 1134-35. Rather, the insurer has two options 1) defend the suit under a reservation of rights or 2) seek a declaratory judgment that there is no coverage. *Id.* If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage. *Id*. Even if this Court were to assume that Scottsdale's October 9, 2006 reservation of rights letter and its January 5, 2007 declaratory judgment action were untimely or otherwise inadequate, applying the estoppel doctrine in this case is premature because the doctrine applies only after a determination has been made that Scottsdale had a duty to defend and renounced that duty. *Id.*; *citing Clemmons v. Travelers Insurance Co.*, 420 N.E.2d 1104, 1109-10 (Il. 1981).[1]

---

[1] In *Employers v. Ehlco*, the court held that a declaratory judgment action filed after the underlying lawsuit has been resolved by judgment or settlement is untimely as a matter of law, resulting in estoppel. *Ehlco*, 708 N.E.2d at 1138. Less than three months later, the court ruled that "an insurer will not be estopped from denying coverage merely because the underlying case proceeds to judgment before the declaratory judgment action is resolved." *State Farm Fire & Casualty Co. v. Martin*, 710 N.E.2d 1228, 1232 (Il. 1999). Although Waukegan argues that Scottsdale's letter and declaratory judgment action were untimely in light of the *Ehlco* decision, *Ehlco* is distinguishable because the insured provided notice to its insurer less than 60 days after suit was filed and the insurer had an opportunity to participate in the defense of the lawsuit. Waukegan offers no legal support for late-notice defenses of the types asserted here where an insured waited 29 months

Whether Waukegan's delay was reasonable is not a question before this Court, but the pleadings cast doubt on whether Scottsdale, in the six-day window it was given, had time to conduct a timely and thorough investigation of the insured's claim as well as to locate and participate in the defense. *See American States Ins. Co. v. National Cycle, Inc.*, 631 N.E.2d 1292, 1300 (Il. 1994) (Notice provisions requiring "immediate" notice of suit serve the purpose of enabling the insurer to conduct a timely and thorough investigation of the insured's claim.); *See also Cincinnati Ins. Co. v. Baur's Opera House,* 694 N.E.2d 593, 598 (Il. 1998); *see also* Couch on Insurance § 199:84, at 199-140 (3rd ed. 1999) (Notice of suit provision is to aid the insurer in the discovery of facts bearing on coverage and to afford it an opportunity to locate the insured, participate in the defense, and control the litigation). Nonetheless, Waukegan's Counterclaim fails to allege facts that plausibly suggest Scottsdale's conduct was vexatious and unreasonable. Good faith disputes are not grounds for Section 155 liability and Scottsdale is not estopped from raising a late notice defense under the facts of this case. Accordingly, Count III of Waukegan's Counterclaim is dismissed with prejudice. So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: September 10, 2007

---

to notify its insurer of a pending lawsuit requesting a defense six days before trial; nor does Waukegan produce support for its position that Scottsdale's declaratory judgment action, filed three months after it received notice, was untimely in light of the fact that judgment was entered two weeks after it received notice.